UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                    NORTHERN DIVISION AT COVINGTON


CIVIL ACTION NO. 2:14-cv-151 (WOB-CJS)


WILLIAM J. EVANS, II                                PLAINTIFF


VS.


TWO HAWK EMPLOYMENT SERVICES, ET AL.               DEFENDANTS


                    MEMORANDUM OPINION AND ORDER


     This is an employment dispute in which Plaintiff William J. Evans, II, proceeding without an attorney, alleges wrongful termination and breach of contract under Kentucky law, and violations of his consumer civil rights under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681.  Evans brings this action against his former employer, Two Hawk Employment Services, LLC ("Two Hawk"), and Harvey Godwin, Jr., member/manager of Two Hawk, in Godwin's individual capacity.  Evans seeks $950,000 in damages, along with attorney's fees and costs.  This matter is before the Court on Defendants' Motion to Dismiss (Doc. 24) and to determine the effect of Two Hawk's Rule 68 offer and Plaintiff's response.  Having reviewed the filings, the Court now issues the following memorandum opinion and order.

I.   FACTUAL AND PROCEDURAL BACKGROUND[1]

A. Plaintiff's Employment History

Two Hawk is a North Carolina limited liability company that provides employment services through offices in North Carolina and Kentucky. On December 16, 2013, Plaintiff, a resident of Florence, Kentucky, applied for employment with Two Hawk as a third-shift sanitation worker. After Plaintiff completed application paperwork at Two Hawk's office in Florence, a Two Hawk employee named Judy interviewed him in person. Plaintiff asserts that during the interview, he and Judy discussed his criminal history and he disclosed that he was on probation. Judy instructed Plaintiff to return two days later for orientation.

As directed, Plaintiff returned on December 18, 2013, for orientation and was then sent to Schwan's Global Supply Chain[2] to obtain a badge. Plaintiff was then instructed to return to Two Hawk to receive a work assignment. Because Judy was unsure of the date for the next sanitation worker training course, she assigned him to a "floater" position. Plaintiff alleges that Judy said to him, "[Y]ou can be a floater, until you are given a work schedule, at which time you will become temp to hire." Doc. 1, Complaint, at 2. Judy then

---

[1] Because the Plaintiff is acting pro se, the Court liberally construes his complaint and filings. See *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]") (internal quotations omitted).

[2] It appears that Schwan's Global Supply Chain is a client for which Two Hawk provides staffing services.

instructed Plaintiff to report to work at Schwan's on December 19, 2013, and December 20, 2013, at 5:45 p.m.

Plaintiff completed the December 19 and December 20 shifts. He alleges that during the December 20 shift, his line leader, Tony Davis, told Evans that he wanted Evans on his line and asked the line operator to assign Evans a work schedule. At that point, Plaintiff believes he moved from a "floater" position to "temp-to hire" status, pursuant to Two Hawk's employee handbook and Judy's explanation.

The following week, Evans returned to Two Hawk's office to pick up his paycheck and informed a Two Hawk employee named Natalia of Davis's request that Plaintiff receive a work schedule. Plaintiff alleges that Natalia told him to "do what Mr. Davis told you," which again he understood as meaning he had become "temp-to-hire."

Shortly after Plaintiff arrived to work on January 1, 2014, a security guard notified him that his badge had been rejected and that he needed to return to the guard station. The next day, Plaintiff contacted Two Hawk and was told that Two Hawk could no longer offer him employment. After Evans pressed for a reason, a Two Hawk staff member said that it was because the company had received the results of Plaintiff's criminal background check.

On January 4, 2014, Plaintiff wrote a letter to Two Hawk's owner, Defendant Harvey Godwin, Jr.[3] explaining the situation. On January 10, 2014, Plaintiff sent a follow-up e-mail to Godwin and received a telephone call from Two Hawk's Human Resources Manager, Harriet

---

[3] Defendants assert that Godwin is a citizen of North Carolina. Plaintiff makes no allegations regarding Godwin's citizenship.

Johnson. Johnson said Two Hawk was investigating and would contact Plaintiff early in the next week. After not hearing from Defendants, Plaintiff followed up several times, finally speaking with Johnson on January 20, 2014. Johnson informed Plaintiff that Defendants had sent a letter to him and to call her back if he had questions.

On January 27, 2014, Plaintiff received a letter (Doc. 1-5, at 1), signed by Godwin, stating that Plaintiff's employment was "denied" because of "dishonesty in the application process." The letter attached a commercially prepared "Background Check Report" (Doc. 1-5, at 2-3) indicating that records had been found in Boone and Grant County, Kentucky criminal courts and in the National Criminal Information Bureau. The report does not include any specific information regarding Plaintiff's criminal history.[4]

More than a month later, Plaintiff received another letter, dated March 4, 2014 (Doc. 1-7), stating: "A decision has been made to not offer you employment. This decision was based, either in whole or in part, on information contained in your Consumer Report. Inadvertently, this letter was not sent earlier, but the delay does not alter the terms of it." The letter also describes how to obtain the report from Asurint (the commercial background check provider) and information about how to dispute the report's contents. Godwin signed

---

[4] The document appears to be a printout of a website where Two Hawk viewed the results of various background checks. The word "View" appears next to several record sources, suggesting that the page contains hyperlinks that would allow a user to view the records that were found by clicking on the links. Thus, although in communicating with Evans, Two Hawk referred to this document as the background check report on which it relied, the document itself does not appear to include all of the information on which Two Hawk based its decision.

the letter as "Adverse Action Representative." Plaintiff asserts that he thereafter made numerous attempts to settle the matter before filing the instant case on August 15, 2014. Doc. 1, Complaint.

Plaintiff's complaint asserts three causes of action against both defendants: a federal claim for violations of the FCRA, a state law wrongful termination claim, and a state law breach of contract claim. First, Plaintiff alleges that Defendants failed to follow the procedures set forth in the FCRA regarding the use of consumer reports for employment purposes. Second, Plaintiff asserts that his termination was wrongful because it involved improper use of the criminal background report; Plaintiff does not assert that he was terminated for a discriminatory or retaliatory reason. Third, Plaintiff alleges breach of contract based on statements in Two Hawk's employee handbook and comments by Two Hawk employee, Judy, that once Plaintiff was assigned a work schedule, he would be in a "temp-to-hire" position.

**B. Defendant Two Hawk's Offer of Judgment**

On October 8, 2014, Two Hawk made an offer of judgment (Doc. 25-2) pursuant to Federal Rule of Civil Procedure 68 in the amount of $11,000 for "Plaintiff's pending claims against Defendant pursuant to the Fair Credit Reporting Act," an amount "inclusive of all damages, interest, costs, reasonable attorneys' fees, and any other amounts to which Plaintiff is or may be entitled to by law under FCRA." Doc. 25-2, Offer of Judgment. The offer further stated that it was "in consideration of the dismissal with prejudice of all of Plaintiff's

-5-

FCRA claims against the Defendant." The Rule 68 offer of $11,000 was not inclusive of "all damages" since the FCRA provides for "punitive damages" without stating a monetary limit. *See* discussion, *infra*.

On October 16, 2014, Plaintiff responded as follows:

> Comes now the Plaintiff (Pro Se), responding to the Defendants motion for judgment. The Plaintiff would accept this offer of $11,000.00, but would ask this honorable Court to allow the Plaintiff, should the other issues in this action end up in a jury trial, permission to use the facts surrounding the Background Report such as, not being given the opportunity to dispute the report, the reports [sic] inaccuracy, etc., not the violations themselves.

Doc. 22, Plaintiff's Response to Rule 68 Judgment Motion. Defendant Two Hawk interpreted this response as a rejection of the offer and filed a joint motion to dismiss on October 24, 2014 (Doc. 24).

**II. ANALYSIS**

**A. Fair Credit Reporting Act Claims**

The Fair Credit Reporting Act provides procedural protections for consumers related to the use of information contained in "consumer reports" to determine eligibility for employment, credit worthiness, and other purposes. *See* 15 U.S.C. § 1681a(d)(1). Specifically, the FCRA seeks to protect consumers from being adversely affected by information in reports that is inaccurate. *See id.* § 1681.

The statute sets forth several requirements for "credit reporting agencies" -- furnishers of consumer information -- and persons with permissible uses of consumer reports, such as prospective employers. *Id.* §§ 1681a(f), 1681b. For example, prior to obtaining a consumer report, a user is required to apprise the consumer of certain rights under the FCRA and obtain written consent from the consumer to request

the consumer's personal information.  *See id.* § 1681b(b)(2).  If the user intends to make an adverse action -- such as denial of employment -- based on information contained in the report, the user must give the consumer notice of such intent prior to taking the adverse action and must furnish to the consumer a copy of the report and written notice of the consumer's rights under the Act.  *Id.* § 1681b(b)(3)(A). Likewise, after taking adverse action "based in whole or in part on any information contained in a consumer report," the FCRA requires users to make certain other disclosures.  *Id.* § 1681m(a).[5]

### 1. FCRA Claim Against Two Hawk

Two Hawk argues that Plaintiff's FCRA claim should be dismissed because the rejected offer of judgment mooted the claim, depriving the Court of subject-matter jurisdiction.  Two Hawk asserts that the offer, representing $1,000 in compensatory damages and $10,000 in punitive damages, encompasses all damages to which Plaintiff would be entitled under the FCRA.  Having offered Evans all he is entitled to under the FCRA, Two Hawk argues, there is no case or controversy over which the Court may preside.

Initially, the Court must determine whether Plaintiff's response operated as a rejection to the offer of judgment.  Courts are to apply contract principles to decide whether there has been a valid offer and acceptance for Rule 68 purposes.  *Mallory v. Eyrich*, 922 F.2d 1273, 1279–80 (6th Cir. 1991).  A plaintiff may not partially accept an

---

[5] A private right of action does not exist to enforce violations of the post-adverse action disclosure requirements set forth in 15 U.S.C. § 1681m.  15 U.S.C. § 1681m(h)(8).

offer, and a manifestation which purports to accept the offer but proposes additional terms is not treated as an acceptance. *See* James Wm. Moore et al., *Moore's Federal Practice* ¶ 68.06[4] (3d ed. 2014). The requirement that an acceptance mirror the offer stems from a policy rationale of not imposing settlements to which defendants have not agreed. *Id.* The Court agrees with Two Hawk that Plaintiff rejected the offer by attempting to impose an additional term -- that he be permitted to use the facts surrounding the FCRA claim in pursuing his state law claims.

Although Two Hawk correctly observes "that an offer of judgment that satisfies a plaintiff's entire demand moots the case," *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 574-75 (6th Cir. 2009),[6] the Court disagrees that Two Hawk's offer of $11,000 satisfies Plaintiff's entire potential recovery under the FCRA. Although Two Hawk's offer included $10,000 in punitive damages, based upon a theory that punitive damages are "generally" capped at ten times the compensatory damages, the FCRA does not cap punitive damages. *See* 15 U.S.C. 1681n(a)(2). Further, *State Farm Mutual Auto Insurance Co. v. Campbell*, 538 U.S. 408 (2003), the case Two Hawk cites to support its 10:1 ratio, specifically declines to impose "a bright-line ratio which a punitive damages award cannot exceed." 538 U.S. at 425. Thus, the Court concludes that the offer did not moot Plaintiff's FCRA claim

---

[6] Two Hawk is incorrect, however, in arguing that if a plaintiff rejects an offer that moots a claim, the claim is simply dismissed. Instead, in such a circumstance, a district court is to "enter judgment in favor of the plaintiff[] in accordance with the defendant[']s Rule 68 offer." *O'Brien*, 575 F.3d at 575.

against Two Hawk and Plaintiff is entitled to continue pursuing that claim.

### 2. FCRA Claim Against Godwin[7]

An individual defendant who is employed by a user of consumer reports may only be considered a "user" of information under the FCRA if he obtains a consumer report for personal purposes or while otherwise acting outside the scope of his or her employment. *See, e.g.*, *Woodell v. United Way of Dutchess Cnty.*, 357 F. Supp. 2d. 761, 774 (S.D.N.Y. 2005)(declining to hold chief executive officer of company that requested consumer report individually liable because officer did not act outside the scope of his employment). Because the complaint makes no allegation that Godwin acted outside the scope of his employment in procuring or using Plaintiff's consumer report, the Court concludes that the complaint fails to state a claim against Godwin in his individual capacity. Accordingly, the FCRA claim against Godwin will be dismissed.

### B. Wrongful Termination Claim

It is well-settled in Kentucky that absent a contractual provision to the contrary or a statutory cause of action, an employer may terminate an employee's employment at-will, meaning "for good cause, for no cause, or for a cause that some might view as morally indefensible." *Miracle v. Bell Cnty. Emergency Med. Servs.*, 237

---

[7] Godwin also asserts that claims against him should be dismissed for lack of personal jurisdiction and insufficient service of process under Federal Rule of Civil Procedure 12(b)(2) and 12(b)(5), respectively. The Court need not decide whether these defenses apply because all claims against Godwin can be disposed of for other reasons.

S.W.3d 555, 558 (Ky. Ct. App. 2007) (citing *Firestone Textile Co. Div., Firestone Tire & Rubber Co. v. Meadows*, 666 S.W.2d 730,731 (Ky. 1983)). The employment at will doctrine is, of course, subject to federal and state statutes forbidding discrimination based on race, gender, disability, and age, and other civil rights violations.

Plaintiff has alleged no facts that suggest his termination from employment meets any of these exceptions. As such, the Court concludes that Plaintiff has failed to state a claim for wrongful termination under Kentucky law. Accordingly, Plaintiff's wrongful termination claims against Two Hawk and Godwin shall be dismissed.

**C. Breach of Contract Claim**

Plaintiff asserts that an employment contract was formed between him and Two Hawk after he received a work schedule. In making this claim, he relies on statements by Two Hawk employees that once he received a work schedule, he would obtain "temp-to-hire" status. He also emphasizes that the employee handbook he received does not mention any probationary period pending the results of a criminal background check.

But Plaintiff fails to state a claim for breach of contract for the same reason he fails to state a claim for wrongful termination: he pleads no facts suggesting that his employment was anything other than at-will. Moreover, the employment handbook Plaintiff references in his complaint (and attaches to his response in opposition to Defendants' motion to dismiss) specifically states "Two Hawk Employment Services, Florence, Kentucky is an 'Employment At Will

-10-

Organization.' Thus meaning, the employee and the employer reserve the right to terminate the working relationship at any time for any reason or no reason." Doc. 26-1, Employee Handbook, at 10.

In alleging breach of contract and "wrongful termination," Plaintiff merely seems to think the action was "unfair," but the Handbook permits termination for "any reason or no reason." Thus, the Court concludes that Plaintiff fails to state a claim for breach of contract and that claim, with respect to all Defendants, will be dismissed.

Thus, the present state of the case is that the offer of judgment was declined and the FCRA claim against Two Hawk remains pending. However, Two Hawk may renew the offer or make a new offer under the terms of Rule 68.

### III. CONCLUSION

Therefore, having reviewed the matter and the Court being sufficiently advised,

**IT IS ORDERED** that:

(1) Defendants' motion to dismiss be, and is hereby, **GRANTED IN PART AND DENIED IN PART**;

(2) All claims against Defendant Harvey Godwin, Jr. be, and are hereby, **DISMISSED WITH PREJUDICE**;

(3) Plaintiff's wrongful termination and breach of contract claims against Defendant Two Hawk Employment Services, be, and are hereby, **DISMISSED WITH PREJUDICE**; and

(4)  The parties are urged to attempt to settle the FCRA claim; if such efforts are unavailing, a settlement-status hearing will be held before the Court on **Wednesday, March 4, 2015 at 1:30 p.m.**

This 28th day of January, 2015.



Signed By:
*William O. Bertelsman*  WOB
United States District Judge